**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**BECKLEY DIVISION**

| | | |
|---|---|---|
| **KABIL ANTON DJENASEVIC,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| **v.** | ) | **Civil Action No. 5:14-14596** |
| | ) | |
| **UNITED STATES DEPARTMENT** | ) | |
| **OF JUSTICE,** *et al.***,** | ) | |
| | ) | |
| **Defendants.** | ) | |

**PROPOSED FINDINGS AND RECOMMENDATION**

Pending before the Court are the following Motions: (1) The United States' Motion to Substitute (Document No. 31), filed on July 15, 2014; and (2) The United States' Motion to Dismiss (Document No. 35), filed on July 18, 2014. The Court notified Plaintiff pursuant to Roseboro v. Garrison, 528 F.2d 304 (4th Cir. 1975), that Plaintiff had the right to file a response to the United States' Motions and submit Affidavit(s) or statements and/or other legal or factual material supporting his claims as they are challenged by the United States in moving to dismiss. (Document Nos. 33 and 38.) On July 18, 2014, and September 8, 2014, Plaintiff filed his Responses in Opposition. (Document Nos. 34, 46, and 47.) The United States filed a Reply on July 18, 2014. (Document No. 37.) Having examined the record and considered the applicable law, the undersigned has concluded that the United States' Motion to Substitute (Document No. 31) should be granted and the United States' Motion to Dismiss (Document No. 35) should be granted.

**FACTUAL AND PROCEDURAL HISTORY**

On April 14, 2014, Plaintiff, acting *pro se* and then in confinement at FCI Beckley, in Beckley, West Virginia, filed a Complaint pursuant to the Federal Tort Claims Act [FTCA], 28

U.S.C. §§ 1346(b) and 2671, *et seq.* (Document No. 1.)[1] In his Complaint, Plaintiff named the following as Defendants: (1) United States Department of Justice; (2) United States Federal Bureau of Prisons; (3) Federal Correctional Institution Beckley Health Services Department; and (4) Dr. Hughes, DDS. (Id.) Plaintiff alleges that Defendants acted with negligence in providing dental treatment. (Id.) Plaintiff explains that "in 2011, [he] lost a filling and went to sick call for an exam." (Id., p. 1.) Plaintiff claims that he was "told to watch the call out list." (Id.) Plaintiff alleges that he made at least six more sick calls, but his "name never materialized on the 'call out list.'" (Id., pp. 1 - 2.) Plaintiff complains that the delay in treatment resulted in unnecessary pain and caused his tooth "to break off one piece at a time." (Id., p. 2.) Plaintiff claims that after he filed an Administrative Remedy with the Warden, he "was called to sick call where D.D.S. Dr. Hughes provided inexcusable and neglectful treatment by simply placing some filling." (Id.) Plaintiff alleges that the "filling was geared to fail and fell off the next day." (Id.) The next day, Plaintiff allegedly reported to sick call where he was "given pain medication, told "that the parts are on order," and instructed "to watch the call out." (Id.) Plaintiff contends that "[a]fter the first filling fell out, Dr. Hughes incompetently installed a screw that broke off at the base." (Id.) Plaintiff states that he "filed multiple complaints with staff and the Medical Director to no avail." (Id.) As a result of the delay, Plaintiff alleges that an "infection set in, resulting in loss of two teeth in addition to another tooth that was pulled." (Id.) As relief, Plaintiff requests monetary damages in the amount of $725,000. (Id., p. 14.) Plaintiff attached a copy of a document entitled "Certificate of Merit West Virginia Code Ann § 55-7B-6-(b)." (Document No. 2.)

---

[1]  Because Plaintiff is acting *pro se*, the documents which he has filed are held to a less stringent standard than if they were prepared by a lawyer and therefore construed liberally. *See Haines v. Kerner*, 404 U.S. 519, 520-21, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972).

By Order entered on April 15, 2014, the undersigned directed Plaintiff to either pay the filing and administrative fee totaling $400 or file an Application to Proceed *in Forma Pauperis*. (Document No. 5.) On May 1, 2014, Plaintiff filed his Application to Proceed *in Forma Pauperis*. (Document No. 6.) By Order entered on May 6, 2014, the undersigned granted Plaintiff's Application to Proceed *in Forma Pauperis* and ordered the Clerk to issue a Summons requiring Defendants to answer or otherwise respond to Plaintiff's claim. (Document No. 8.) On May 12, 2014, Plaintiff filed his Amended Complaint wherein he continued to allege that Defendants acted with negligence in providing dental treatment. (Document No. 9.)

On July 15, 2014, the United States filed a Motion to Substitute and Memorandum of Law in Support. (Document Nos. 31 and 32.) The United States requests that the Court dismiss Defendant Dr. Stephen Hughes from alleged tort claims and substitute the United States in his place as the Defendant in this civil action. (Id.) In support of the Motion, the United States attaches a "Certification" by the United States Attorney. (Document No. 31-1.) Notice pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), was issued to Plaintiff on July 16, 2014, advising him of the right to file a response to the United States' Motion to Substitute. (Document No. 33.) On July 18, 2014, Plaintiff filed his Response in Opposition. (Document No. 34.) On the same day, the United States filed its "Reply in Support of its Motion to Substitute." (Document No. 37.)

Also on July 18, 2014, the United States filed a Motion to Dismiss and Memorandum in Support. (Document Nos. 35 and 36.) The United States argues that Plaintiff failed to comply with the provisions of the West Virginia Medical Professional Liability Act [MPLA] concerning his claim of negligent medical/dental care. (Id.) Notice pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), was issued to Plaintiff on July 21, 2014, advising him of the right to file a response to the United States' Motion to Dismiss. (Document No. 38.) On September 8, 2014, Plaintiff filed his

3

Responses in Opposition. (Document Nos. 46 and 47.) As Exhibits, Plaintiff attaches the following:

(1) A copy of a "Supporting Affidavit of Witness Mitchell Workman Concerning Dr. Hughes's

Malpractice"[2] (Document No. 47, p. 7.); (2) A copy of Plaintiff's "Request to Staff" dated April 19,

2013 (Id., p. 8.); (3) A copy of the "Extension of Time for Response - Administrative Remedy" dated

February 1, 2013 (Id., p. 9.); and (4) A copy of Plaintiff's pertinent dental records (Id., pp. 10 - 36.).

## THE STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted

as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 129

S.Ct. 1937, 173 L.Ed.2d 868 (2009)(quoting Bell Atlantic Corporation v. Twombly, 550 U.S. 554,

570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). "A claim has facial plausibility when the plaintiff

pleads factual content that allows the court to draw the reasonable inference that the defendant is

liable for the misconduct alleged." Id. Although factual allegations must be accepted as true for

purposes of a motion to dismiss, this principle does not apply to legal conclusions. Id. "Threadbare

recitals of the elements of a cause of action, supported by mere conclusory statements, do not

suffice." Id. The "[f]actual allegations must be enough to raise a right to relief above the speculative

level on the assumption that all of the complaint's allegations are true." Twombly, 550 U.S. at 555,

127 S.Ct. at 1959. Where a *pro se* Complaint can be remedied by an amendment, however, the

District Court may not dismiss the Complaint with prejudice, but must permit the amendment.

Denton v. Hernandez, 504 U.S. 25, 34, 112 S.Ct. 1728, 1734, 118 L.Ed.2d 340 (1992).

---

[2] Inmate Workman's Affidavit states that he received negligent dental care from Dr. Hughes. Unsupported affidavits setting forth "ultimate or conclusory facts and conclusions of law" are insufficient. *Moore v. United States*, 1987 WL 11280 (S.D.W.Va. March 23, 1987); *also see Evans v. Technologies Applications & Service, Co.*, 80 F.3d 954, 692 (4th Cir. 1996). Additionally, Inmate Workman's Affidavit relates to his personal experience with Dr. Hughes. Thus, the Affidavit does not support a finding or conclusion regarding treatment provided to Plaintiff.

## DISCUSSION

### A.     The United States as a Party.

In its Motion, the United States argues that Defendant Hughes should be dismissed and the United States substituted as the Defendant as to all alleged tort claims. (Document No. 31.) In support, the United States Attorney filed a "Certification" stating that Defendant Hughes was acting within the scope of his employment. (Document No. 31-1.) In Response, Plaintiff argues that "Dr. Hughes was not solely acting in the scope of his official capacity and is individually named as a Defendant in this action." (Document No. 34, p. 1.) Plaintiff complains that the United States Attorney's Certification "fails to list his basis or 'information now available' in his Motion and does not list any facts nor any reason why Dr. Stephen Hughes was forced to terminate his employment." (Id., p. 2.) Plaintiff asserts that the "AUSA simply wants to switch Dr. Hughes' individual capacity for only official capacity to dismiss this action." (Id.) In Reply, the United States argues that "certification constitutes prima facie evidence that Dr. Hughes was acting within the scope of his employment and shifts the burden to Plaintiff to provide evidence to the contrary." (Document No. 37, p. 1.) The United States contends that "[n]ot only are there no facts showing that Dr. Hughes should be sued in his individual capacity, there are no specific claims that indicate Dr. Hughes should be sued in anything but his official capacity." (Id.) The United States notes that "Plaintiff states that his 'injuries resulted from the negligence of the agents, servants, and employees of defendant, acting within the scope of their employment." (Id., p. 2.) Accordingly, the United States argues there is "no basis to allow a suit against Dr. Hughes in his individual capacity to continued." (Id.)

The Federal Tort Claims Act [FTCA], 28 U.S.C. § 1346(b)(1) and 28 U.S.C. § 2671, *et seq*., authorizes suits against the United States for damages for injuries or loss of property or personal injury or death caused by the negligent or wrongful act or omission of any employee of the United

States while acting within the scope of his or her office or employment under circumstances where the United States, if a private person, would be liable in accordance with the law of the place where the act or omission occurred. The FTCA provides at 28 U.S.C. § 2674 as follows:

> The United States shall be liable, respecting the provisions of this title relating to tort claims, in the same manner and to the same extent as a private individual under like circumstances, but shall not be liable for interest prior to judgment or for punitive damages.

Inmates may file claims of liability against the United States but may not assert claims of personal liability against prison officials for violations of their constitutional rights under the FTCA.[3] Carlson v. Green, 446 U.S. 14, 21 - 23, 100 S.Ct. 1468, 1472 -74, 64 L.Ed.2d 15 (1980). In order to maintain a case against the United States under the FTCA, Plaintiff must demonstrate that his action is permissible under the FTCA and satisfies the necessary elements of a tort claim cognizable under law of the State in which the action accrued.

The United States attaches a "Certification" by the United States Attorney stating that "[o]n the basis of the information now available with respect to the allegations referred to therein, former U.S. Bureau of Prisons employee Dr. Stephen Hughes was acting within the scope of his employment as an employee of the United States at the time of the incident out of which the claim arose."[4]

---

[3]  In his Response to the United States' Motion to Dismiss, Plaintiff also contends that Defendants violated his Eighth Amendment rights by failing to provide adequate dental treatment. (Document No. 47, pp. 4 - 5.) The undersigned notes that Plaintiff clearly indicated in his Complaints that his intention was to seek relief pursuant to the FTCA. (Document Nos. 1 and 9.)

[4]  Title 28 U.S.C. § 2679(d)(1) provides as follows:

Upon certification by the Attorney General that the defendant employee was acting within the scope of his office or employment at the time of the incident out of which the claim arose, any civil action or proceeding commenced upon such claim is a United States district court shall be deemed an action against the United States under the provisions of this title and all references thereto, and the United States shall be substituted as the party defendant.

(Document No. 30-1.) A United States Attorney's certification "is conclusive unless challenged." Gutierrez de Martinez v. Drug Enforcement Admin., 111 F.3d 1148, 1153 (4th Cir. 1997). "When the certification is challenged, it serves as prima facie evidence and shifts the burden to the plaintiff to prove, by a preponderance of the evidence, that the defendant federal employee was acting outside the scope of his employment." Id.; Also see Maron v. United States, 126 F.3d 317, 323 (4th Cir. 1997). In determining whether certification is proper, the Court reviews the question *de novo*. Gutierrez, 111 F.3d at 1154. The plaintiff must present "specific evidence or the forecast of specific evidence that contradicts the Attorney General's certification decision, not mere conclusory allegations and speculation." Id. at 1155. If the plaintiff presents evidence satisfying his burden of proof, the defendant may come forward with evidence in support of the certification. Id. The Court reviews the "certification, the pleadings, the affidavits, and any supporting documentary evidence" for issues of material fact. Id. "Only if the district court concludes that there is a genuine question of fact material to the scope-of-employment issue should the federal employee be burdened with discovery and evidentiary hearing." Id. In determining whether a federal employee was acting within the scope of his or her employment, the Court applies the law of the state where the conduct occurred. Id. at 1156(citing Jamison v. Wiley, 14 F.3d 222, 227 n. 2 (4th Cir. 1994).

The undersigned notes that it is undisputed that Defendant Hughes' alleged misconduct occurred at FCI Beckley, which is located in Beaver, West Virginia. Thus, the Court will apply the law of the State of West Virginia in determining whether Defendant Hughes was acting within the scope of his employment. The West Virginia Supreme Court has defined "scope of employment" as "a relative term and requires a consideration of surrounding circumstances, including the character

7

of the employment, the nature of the wrongful deed, the time and place of its commission and the purpose of the act." Foodland v. State ex rel. W. Va. Dept. of Health and Human Res., 207 W.Va. 392, 397, 532, S.E.2d 661, 665 (2000). Furthermore, the West Virginia Supreme Court explained that an act is within the scope of employment if:

> (1) It is something fairly and naturally incident to the business and (2) it is done while the servant was engaged upon the master's business and is done, although mistakenly or ill-advisedly, with a view to further the master's interest, or from some impulse or emotion which naturally grew out of or was incident to the attempt to perform the master's business, and did not arise wholly from some external, independent and personal motive on the part of the servant to do the act upon his own account.

Id.

In the instant case, Plaintiff alleges that Defendant Hughes engaged in negligent conduct while working as a dentist at FCI Beckley. Plaintiff acknowledges that Defendant Hughes provided dental treatment, but complains that the treatment was delayed and inadequate. Plaintiff first contends that Defendant Hughes delayed replacing his filling, which caused his tooth "to break off one piece at a time." Plaintiff next complains that when Defendant Hughes provided treatment, Defendant Hughes was negligent. Plaintiff alleges Defendant Hughes filled his tooth and the filling fell out the next day. Plaintiff complains that Defendant Hughes then installed a screw, which later broke off at the base. Plaintiff alleges that Defendant Hughes' improper and delayed treatment resulted in the loss of three teeth. Based upon the foregoing, the undersigned finds that Plaintiff has failed to establish by a preponderance of the evidence that Defendant Hughes was acting outside the scope of his employment as defined by West Virginia law. Defendant Hughes' actions were "fairly and naturally incident to the business" of providing dental treatment within the prison.[5] Although Plaintiff contends

---

[5] The undersigned notes that there appears to be no material issue of fact concerning the issue of proper certification. Based upon allegations contained in Plaintiff's Complaint, the United States filed its certification stating that Defendant Hughes was acting within the scope of his employment.

that Defendant Hughes provided delayed and negligent dental treatment, Plaintiff acknowledges that Defendant Hughes provided the treatment while performing his duties as a dentist at FCI Beckley. In his Amended Complaint, Plaintiff alleges that defendants were negligent "in the course of their employment" and while "acting within the scope of their employment." (Document No. 9, pp. 3 - 4.) Thus, even assuming that Defendant Hughes provided inadequate dental treatment, he was clearly acting within the scope of his employment as a dentist when filling Plaintiff's tooth, installing a screw, and extracting teeth. Further, there is no evidence or allegation that Defendant Hughes' conduct was the result of some external, independent, or personal motive. See LeRose v. United States, 285 Fed.Appx. 93 (4th Cir. 2008)(finding that a correctional officer's action of extorting money from prisoners was beyond the scope of his employment because the conduct was for the officer's own benefit and not intended to benefit the Bureau of Prisons or the United States). Plaintiff fails to submit specific evidence or the forecast of specific evidence that contradicts the Attorney General's certification. The undersigned, therefore, recommends that the United States' Motion to Substitute (Document No. 31.) be granted.

**B.      Failure to satisfy the requirements of the MPLA.**

An inmate "can sue under the FTCA to recover damages from the United States Government for personal injuries sustained during confinement in a federal prison, by reason of the negligence of a government employee." United States v. Muniz, 374 U.S. 150, 83 S.Ct. 1850, 10 L.Ed.2d 805 (1963). The FTCA provides at § 2674 as follows:

> The United States shall be liable, respecting the provisions of this title relating to tort claims, in the same manner and to the same extent as a private individual under like circumstances, but shall not be liable for interest prior to judgment or for punitive damages.

The FTCA, however, does not create a new cause of action. Medina v. United States, 259 F.3d 220,

223 (4th Cir. 2001). The statute merely "permits the United States to be held liable in tort in the same respect as a private person would be liable under the law of the place where the act occurred." Id.

In the present case, Plaintiff alleges that Defendants' negligent acts occurred in the State of West Virginia. Accordingly, West Virginia State law applies. Under West Virginia law, a plaintiff must satisfy certain prerequisites prior to filing suit against a health care provider. Specifically, a plaintiff must serve each defendant health care provider with a notice of claim with an attached screening certificate of merit executed under oath by a health care provider qualified as an expert under the West Virginia Rules of Evidence at least thirty (30) days prior to filing suit. W. Va. Code § 55-7B-6.[6] Compliance with West Virginia Code § 55-7B-6 is mandatory prior to filing suit in federal court. Stanley v. United States, 321 F.Supp.2d 805, 806-07 (N.D.W.Va. 2004); also see Starns

---

[6] West Virginia Code § 55-7B-6 provides the following in pertinent part:

(a) Notwithstanding any other provision of this code, no person may file a medical professional liability action against any health care provider without complying the provisions of this section.

(b) At least thirty days prior to the filing of a medical professional liability action against a health care provider, the claimant shall serve by certified mail, return receipt requested, a notice of claim on each health care provider the claimant will join in litigation. The notice of claim shall include a statement of the theory or theories of liability upon which a cause of action may be based, and a list of all health care providers and health care facilities to whom notices of claim are being sent, together with a screening certificate of merit. The screening certificate of merit shall be executed under oath by a health care provider qualified as an expert under the West Virginia rules of evidence and shall state with particularity: (1) The expert's familiarity with the applicable standard of care in issue; (2) the expert's qualifications; (3) the expert's opinion as to how the applicable standard of care was breached; and (4) the expert's opinion as to how the breach of the applicable standard of care resulted in injury or death. A separate screening certificate of merit must be provided for each health care provider against whom a claim is asserted. The person signing the screening certificate of merit shall have no financial interest in the underlying claim, but may participate as an expert witness in any judicial proceeding. Nothing in this subsection may be construed to limit the application of Rule 15 of the Rules of Civil Procedure.

v. United States, 923 F.2d 34 (4th Cir. 1991)(holding that Virginia's medical malpractice liability cap applies to claims brought against the United States under the FTCA). West Virginia Code § 55-7B-6(c), however, provides that no screening certificate of merit is necessary where "the cause of action is based upon a well-established legal theory of liability which does not require expert testimony supporting a breach of the applicable standard of care."

Plaintiff alleges that Defendant Hughes acted with negligence in providing dental treatment. In its Motion to Dismiss, the United States contends that Plaintiff's claim should be dismissed because he failed to timely and properly file a screening certificate of merit pursuant to the MPLA. (Document Nos. 35 and 36.) In Response, Plaintiff first notes that he filed a "Certificate of Merit." (Document No. 47, p. 3.) Next, Plaintiff argues that "no expert opinion is necessary because Dr. Hughes DDS knowingly so delayed this plaintiff's dental care and treatment to cause loss of three teeth and injury." (Id.) Plaintiff, therefore, contends that the lack of care "is so great and gross that expert testimony is unnecessary." (Id., p. 2.)

The Court first notes that Plaintiff's "Certificate of Merit" is a self-prepared document signed by Plaintiff. (Document No. 2.) The undersigned, therefore, finds that Plaintiff's "Certificate of Merit" fails to comply with W. Va. Code § 55-7B-6 because it is not executed under oath by a health care provider, who is qualified as an expert under the West Virginia Rules of Evidence. Next, the undersigned will consider whether expert testimony is necessary in the instant case. Under West Virginia law, "[i]t is the general rule that in medical malpractice cases, negligence or want of professional skill can be proved only by expert witnesses." Syllabus Point 2, Roberts v. Gale, 149 W.Va. 166, 139 S.Ed.2d 272 (1964). Expert testimony, however, is not required "where the lack of care or want of skill is so gross as to be apparent, or the alleged breach relates to noncomplex matters of diagnosis and treatment within the understanding of lay jurors by resort to common knowledge

11

and experience." <u>Farley v. Shook</u>, 218 W.Va. 680, 629 S.E.2d 739 (2006). The MPLA provides as follows concerning claims "based upon a well-established legal theory of liability":

> Notwithstanding any provision of this code, if a claimant or his or her counsel, believes that no screening certificate of merit is necessary because the cause of action is based upon a well-established legal theory of liability which does not require expert testimony supporting a breach of the applicable standard of care, the claimant or his or her counsel, shall file a statement specifically setting forth the basis of the alleged liability of the health care provider in lieu of a screening certificate of merit.

West Virginia Code § 55-7B-6(c). In <u>Johnson v. United States</u>, 394 F.Supp.2d 854, 858 (S.D.W.Va. 2005), the Court held that plaintiff's statement on his administrative claim form alleging improper surgical implantation of a prosthesis satisfied the provisions of the MPLA permitting the filing of a claim without submitting a certificate of merit. <u>Id.</u> The Court reasoned that plaintiff's claim was based upon a well-established legal theory of liability and expert testimony was not required to show a breach of the standard of care because plaintiff stated on his form that the surgeon "implanted the too large Prosthesis backward causing diminished bloodflow and subsequent Necrosis and infection." <u>Id.</u> at 858.

Unlike the facts in <u>Johnson</u>, Plaintiff's allegations of negligence are complex and expert testimony is necessary. <u>See</u> <u>O'Neil v. United States</u>, 2008 WL 906470 (S.D.W.Va. Mar. 31, 2008)(finding that plaintiff was not excused from filing a screening certificate of merit because the treatment and diagnosis of Graves disease, hyperthyroidism, congestive heart failure, and cardiomyopathy, are not within the understanding of lay jurors by resort to common knowledge and experience); <u>also see</u> <u>Giambalvo v. United States</u>, 2012 WL 984277 * 4 (N.D.W.Va. March 22, 2012)(finding that <i>Johnson</i> "is a rare exception to 'the general rule that in medical malpractice cases negligence or want of professional skill can be proved only by expert witnesses.'"). In the instant case, it appears that Defendant Hughes evaluated and provided treatment such as filling placement,

a root canal, the installation of a post and core, the fabrication of an occlusal mouth guard, and the extraction of teeth. (Document No. 1, p. 4.) Plaintiff, however, contends that Defendant Hughes provided inadequate and delayed dental treatment, which resulted in the loss of three teeth. Expert testimony is necessary to support a finding that the dental treatment provided by Defendant Hughes fell below the applicable standard of care. Plaintiff's dental records reveal that Plaintiff suffered from pulpitis, an abscess, a draining fistula tract, a retained root, and periapical radioloucency. (Document No. 1., p. 4 and Document No. 47, pp. 23 - 37.) The undersigned finds that what constitutes timely treatment, risk factors, symptoms, possible side-effects, and appropriate treatment options for the above conditions are not within the understanding of lay jurors by resort to common knowledge and experience. See Ellis v. United States, 2013 WL 4679933 (S.D.W.Va. Aug. 30, 2013)(J. Berger)(adopting the undersigned's finding that what constitutes appropriate treatment for cavities, gum disease, and broken teeth are not within the understanding of lay jurors). Accordingly, Plaintiff is not excused from filing a screening certificate of merit pursuant to West Virginia Code § 55-7B-6(c). The undersigned, therefore, recommends that the United States' Motion to Dismiss (Document No. 35) be granted

## PROPOSAL AND RECOMMENDATION

Based upon the foregoing, it is therefore respectfully **PROPOSED** that the District Court confirm and accept the foregoing factual findings and legal conclusions and **RECOMMENDED** that the District Court **GRANT** the United States' Motion to Substitute (Document No. 31.), **GRANT** the United States' Motion to Dismiss (Document No. 35.), **DISMISS** Plaintiff's Complaint (Document Nos. 1 and 9.) and remove this matter from the Court's docket.

The Plaintiff is hereby notified that this "Proposed Findings and Recommendation" is hereby

13

**FILED**, and a copy will be submitted to the Honorable United States District Judge Irene C. Berger. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rule 6(d) and 72(b), Federal Rules of Civil Procedure, the Plaintiff shall have seventeen (17) days (fourteen days, filing of objections and three days, mailing/service) from the date of filing of this Findings and Recommendation within which to file with the Clerk of this Court specific written objections identifying the portions of the Findings and Recommendation to which objection is made and the basis of such objection. Extension of this time period may be granted for good cause.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. Snyder v. Ridenour, 889 F.2d 1363, 1366 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 155 (1985); Wright v. Collins, 766 F.2d 841, 846 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir. 1984). Copies of such objections shall be served on opposing parties, Judge Berger and this Magistrate Judge.

The Clerk is requested to send a copy of this Proposed Findings and Recommendation to Plaintiff, who is acting *pro se*, and transmit a copy to counsel of record.

Date: October 16, 2014.

R. Clarke VanDervort
United States Magistrate Judge