IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

BECKLEY DIVISION

KABIL ANTON DJENASEVIC,

           Plaintiff,

v.                            CIVIL ACTION NO.  5:14-cv-14596

UNITED STATES DEPARTMENT OF
JUSTICE, et al.,

           Defendants.

**MEMORANDUM OPINION AND ORDER**

The Court has reviewed the Fourth Circuit's *Opinion* (Document 77), remanding the above-styled matter to this Court for consideration of whether the Plaintiff's Objections (Document 60) to Magistrate Judge R. Clarke VanDervort's *Proposed Findings and Recommendations* (PF&R) (Document 52) were timely filed. After careful consideration, the Court finds that the Plaintiff's Objections were timely filed, but nonetheless, finds that the Magistrate Judge's PF&R should be adopted, and the Plaintiff's Objections should be overruled.

**PROCEDURAL HISTORY**

On April 14, 2014, the Plaintiff, acting *pro se,* and then in confinement at the Federal Correctional Institution – Beckley ("FCI Beckley"), in Beckley, West Virginia, filed a *Notice of Intention to File Claim* (Document 1) and accompanying exhibits. Therein, he expressed his intent to file a claim pursuant to the Federal Tort Claim Act (FTCA), 28 U.S.C. §1346(b) and 2671, *et seq*, against the United States Department of Justice (DOJ), the Bureau of Prisons (BOP), FCI Beckley, and Dr. Stephen Hughes, D.D.S., a physician employee at FCI Beckley. (Pl.'s Not. of Int. to File Claim, at 1.) The Plaintiff alleged that Dr. Hughes was "deliberately indifferen[t]"

to the Plaintiff's "dental needs" during his confinement at FCI-Beckley, and articulated various facts in support of this claim. (*Id*. at 1.) The same day, the Plaintiff also filed his *Certificate of Merit* (Document 2), pursuant to West Va. Code §55-7B-6. On April 15, 2014, Magistrate Judge VanDervort entered an *Order* (Document 5) instructing the Plaintiff to either pay the filing fee for this action, or file an Application to Proceed *in Forma Pauperis*. The Plaintiff filed his *Application to Proceed Without Prepayment of Fees and Costs* (Document 6) on May 1, 2014, and on May 6, 2015, Magistrate Judge VanDervort entered on *Order* (Document 8) granting the motion.

On May 12, 2014, the Plaintiff filed his *Complaint* (Document 9). Therein, the Plaintiff claimed that he had "complied with all prerequisites to a suit under the Federal Tort Claims Act" by "[f]il[ing] [n]otice; exhaust[ing] administrative remed[ies]; [f]il[ing] [a] tort [c]laim; and [filing] a Certificate of Merit." (Compl., at 3.) The Plaintiff reiterated his allegations against Dr. Hughes, the BOP, and FCI Beckley, and claimed, *inter alia*, that as a result of the "fault of the defendants," he suffered "loss of teeth," "[m]ental and emotional injury," and "[p]ermanent loss, [d]amage and injury/suffering." (*Id*. at 4.) On July 15, 2014, the United States filed a *Motion to Substitute* (Document 31), requesting that the Court dismiss Dr. Hughes from the case, on the basis that he was acting within the scope of his employment, and substitute the United States in his place. (United States' Mot. to Substitute, at 1.) On July 18, 2014, the *Plaintiff Objection to United States Attorney(s) Motion to Substitute Dr. Hughes for the United States as a Defendant* (Document 34) was filed. Also on July 18, 2014, the Defendants filed its *Motion to Dismiss* (Document 35) and *Memorandum of Law in Support* (Document 36). On September 8, 2014, the

2

*Plaintiff's Memorandum of Law in Opposition to Defendant's Motion to Dismiss, and Summary Judgment* (Document 46), and *Memorandum of Law in Opposition* (Document 47) were filed.

Magistrate Judge VanDervort issued a PF&R as to the United States' motion to substitute and the Defendants' motion to dismiss on October 16, 2014. Magistrate Judge VanDervort recommended that both motions be granted. (PF&R, at 1.) On November 10, 2014, this Court entered a *Memorandum Opinion & Order* (Document 56), where the Court found that the Plaintiff had failed to timely file any objections to the PF&R, adopted Magistrate Judge VanDervort's findings, and granted both the United States' motion to substitute and the Defendants' Motion to Dismiss. (PF&R, at 1-2.) The Plaintiff's Objections were filed with this Court on November 10, 2014. However, the Objections were dated October 30, 2014, and included a Certificate of Service by Mail, signed by the Plaintiff and dated October 30, 2014. (Pl.s' Objections, at 8-9.) The Objections were processed by the Bureau of Prisons at Federal Corrections Institution – Lompoc, 3600 Guard Road, Lompoc, California on November 4, 2014, and postmarked by the United States Post Office on the same day. (*Id*. at 10.)

On November 10, 2014, the Plaintiff also filed his proposed *Amended Complaint* (Document 61). On November 24, 2014, the *Plaintiff's Motion for Reconsideration* (Document 63) was filed. Therein, the Plaintiff argued that he had timely filed his objections to Magistrate Judge VanDervort's PF&R, but that the filing of the document was delayed due to interference by prison officials. (Pl.s' Mot. for Reconsideration, at 1.) The same day, the Plaintiff filed his *Notice of Appeal* (Document 64), wherein he appealed this Court's Memorandum Opinion & Order of November 10, 2014, to the Fourth Circuit. On January 15, 2015, this Court entered an *Order* (Document 70) denying the Plaintiff's motion for reconsideration. On June 16, 2015, the Fourth

3

Circuit issued its *Opinion* (Document 77), finding that this Court incorrectly applied the prison mailbox rule, and remanding the Plaintiff's case to this Court for reconsideration of whether the Plaintiff had delivered his objections to Magistrate Judge VanDervort's PF&R to "prison officials for mailing on or before November 3, 2014." (4CCA Opinion, at 2.) If the Court determines that the Plaintiff delivered his objections to prison officials on or before November 3, 2014, the Fourth Circuit instructed the Court to "review de novo the portions" of Magistrate Judge VanDervort's PF&R "to which [the Plaintiff] specifically objected." (*Id*. at 2.)

## STATEMENT OF FACTS

In his Complaint, the Plaintiff alleged that the Defendants acted negligently in providing his dental treatment at FCI-Beckley. (Compl., at 1.) The Plaintiff indicated that "in 2011, [he] lost a filling and went to sick call for an exam." (*Id*.) The Plaintiff claims that he was "told to watch the call out list." (*Id*.) The Plaintiff complains that he made at least six more sick calls, but that his "name never materialized on the 'call out list.'" (*Id*. at 1-2.) As a result of the delay in treatment, the Plaintiff alleges that he suffered unnecessary pain, and that his tooth "… br[oke] off one piece at a time." (*Id*. at 2.)

The Plaintiff claims that after filing an Administrative Remedy with the Warden at FCI-Beckley, he was "called to sick call where D.D.S. Hughes provided inexcusable and neglectful treatment by simply placing some filling." (*Id*.) The Plaintiff alleges that the "filling was geared to fail and fell off the next day." (*Id*.) The next day, the Plaintiff claims to have reported to sick call, where he was "given pain medication," told "the parts are on order," and instructed "to watch the call out." (*Id*.) The Plaintiff claims that after the first filling "fell out," Dr, Hughes "incompetently installed a screw that broke off at the base." (*Id*.) The Plaintiff states that he "filed

4

multiple complaints with staff and the Medical Director to no avail." (*Id.*) As a result of Dr. Hughes' negligent treatment, the Plaintiff alleges that an "infection set in, resulting in loss of two teeth in addition to another tooth that was pulled." (*Id.*) As relief, the Plaintiff requests monetary damages in the amount of $725,000. (*Id.* at 14.) The Plaintiff attached a *Certificate of Merit* under West Virginia Code §55-7B-6-(b) to his *Notice of Intention to File a Claim.* The *Certificate of Merit*, signed by the Plaintiff, largely reiterates claims made by the Plaintiff in his *Notice of Intention to File a Claim*; specifically, that Dr. Hughes caused Plaintiff to "los[e] three teeth," as well as "pain, and mental anguish" and "… chronic headaches, lock jaw with night teeth grinding, causing permanent disfigurement." (Certificate of Merit, at 2.)

## DISCUSSION

*A. Timeliness*

The Court must first address whether the Plaintiff timely filed his objections to Magistrate Judge VanDervort's PF&R. Under 28 U.S.C. §636(b)(1)(B) and Rules 6(d) and 72(b) of the Federal Rules of Civil Procedure, a Plaintiff has a total of seventeen (17) days following the filing of a Magistrate Judge's Findings and Recommendations (fourteen days to file objections, and three days for mailing and service) to file with the Clerk of the Court specific written objections identifying the portions of the PF&R to which objection is made, and the basis of such objection. 28 U.S.C. §636(b)(1)(B); Fed.R.Civ.P. 6(d); 72(b). Failure to file written objections constitutes a waiver of de novo review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. *Snyder v. Ridenour*, 889 F.2d 1363, 1366 (4th Cir. 1989); *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Wright v. Collins*, 766 F.2d 841, 846 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91, 94 (4th Cir.1984). When a *pro se* litigant is in federal custody, the date

5

of filing is determined by the "prison mailbox rule," under which a document is considered "filed" when it is delivered to prison officials by the inmate. *Houston v. Luck*, 487 U.S. 266, 276 (1988).

In his motion for reconsideration, the Plaintiff argues that he " … type[d] his objections … on September 30, 2014" and "dropped [the objections] in the BOP mail boxper[sic] a BOP mail box rule 'Marked Special Mail' on September 30, 2014."[1] (Pl.s' Mot. for Reconsideration, at 1.) The Plaintiff claims unit officers then failed to promptly forward his objections. (*Id*.) Thus, the Plaintiff claims that he "did file his objections ... on time." (*Id*.)

The Court notes that the "Certificate of Service" attached to the Plaintiff's objections is dated October 30, 2014, and the objections also bear that date. (Pl.s' Objections, at 8-9.) Magistrate Judge VanDervort filed his PF&R on October 16, 2014. Thus, if the Plaintiff placed his objections in the custody of prison officials on October 30, 2014, the Plaintiff would have timely filed his objections. Without speculating as to the conduct of prison officials, the Court finds that the only "evidence" submitted on this issue results in a conclusion that the Plaintiff delivered his objections to the PF&R on October 30, 2014, and that the objections were therefore timely filed. In reaching this conclusion, the Court relies heavily upon *Luck*, where the Supreme Court emphasized that "[u]nlike other litigants, *pro se* prisoners cannot personally travel to the courthouse to see that the notice is stamped 'filed,'" nor can such litigants "place the notice directly into the hands of the United States Postal Service." *Luck*, 487 U.S. at 271. Moreover, the Supreme Court stated that

> "the *pro se* prisoner has no choice but to entrust the forwarding of his [Objections] to prison authorities whom he cannot control or supervise and who may have every incentive to delay. No matter how far in advance the *pro se* prisoner delivers his [Objections] to the prison authorities, he can never be sure that it will ultimately

---

1 The Court is confident that the Plaintiff actually meant to state that he placed his objections in the custody of prison officials on October 30, 2014, as the Plaintiff's objections bear this date.

6

> get stamped 'filed' in time. And if there is a delay that the prisoner suspects is attributable to the prison authorities, he is unlikely to have any means of proving it, for his confinement prevents him from monitoring the process sufficiently to distinguish delay on the part of the prison authorities from slow mail service … Unskilled in law, unaided by counsel and unable to leave the prison, his control over the processing of his [Objections] necessarily ceases as soon as he hands it over to the only public officials to whom he has access – the prison authorities – and the only information he will likely have is the date he delivered the notice to those prison authorities …"

*Luck*, 487 U.S. at 271-72.

  B. *The Plaintiff's Substantive Claims*

    1. *Standard of Review*

28 U.S.C. § 1915A provides for screening of any complaint "in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity." 28 U.S.C. § 1915(a). Before permitting the case to move forward or requiring a response from the defendants, "the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint (1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." § 1915(b). The Magistrate Judge recommends, based on his screening of the case, that the Plaintiff's complaint be dismissed for failure to state a claim upon which relief may be granted.

This Court "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1)(C). However, the Court is not required to review, under a *de novo* or any other standard, the factual or legal conclusions of the magistrate judge as to those portions of the findings or recommendation to which no objections are addressed. *Thomas v. Arn*, 474 U.S. 140, 150 (1985). In addition, this Court need not conduct a *de novo* review when a party "makes general and conclusory objections that do not direct the Court to a specific error in the magistrate's proposed findings and

7

recommendations." *Orpiano v. Johnson*, 687 F.2d 44, 47 (4th Cir.1982). When reviewing portions of the PF&R *de novo*, the Court will consider the fact that Plaintiffs are acting *pro se*, and their pleadings will be accorded liberal construction. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); Loe v. Armistead, 582 F.2d 1291, 1295 (4th Cir.1978). Here, the Plaintiff objects to Magistrate Judge VanDervort's finding that his Complaint must be dismissed for failing to satisfy the provisions of West Virginia's Medical Professional Liability Act (MPLA), W. Va. Code §55-7B-6.2 (Pl.s' Objections, at 1-2.)

### 2. *The Plaintiff's FTCA Claims*

As properly noted by Magistrate Judge VanDervort, an inmate "can sue under the FTCA to recover damages from the United States Government for personal injuries sustained during confinement in a federal prison, by reason of the negligence of a government employee." *United States v. Muniz*, 374 U.S. 150, 83 S.Ct. 1850, 10 L.Ed.2d 805 (1963). The FTCA provides:

> The United States shall be liable, respecting the provisions of this title relating to tort claims, in the same manner and to the same extent as a private individual under like circumstances, but shall not be liable for interest prior to judgment or for punitive damages.

28 U.S.C. §2674. The FTCA, however, does not create a new cause of action. *Medina v. United States*, 259 F.3d 220, 223 (4th Cir. 2001). The statute merely "permits the United States to be held liable in tort in the same respect as a private person would be liable under the law of the place where the act occurred." *Id*.

---

2   The Plaintiff also objected, inter alia, to (1) Magistrate Judge VanDervort's *Order* (Document 53) of October 16, 2014, denying the Plaintiff's motions for appointment of counsel, access to the law library and production of documents; and (2) the procedures used by the United States Attorney to provide the Plaintiff with documents relevant to his Complaint. (Pl.s' Objections, at 1-2.) Because these objections do not concern the issues considered by Magistrate Judge VanDervort in his PF&R, and are thus improperly raised, the Court declines to address them. The Plaintiff also requested leave to amend his Complaint to add additional defendants; this request was rendered moot by this Court's January 1, 2015 *Order* (Document 70) denying the Plaintiff's motion to amend.

Because the Plaintiff alleges that the Defendant's negligent acts occurred while the Defendant was detained at FCI-Beckley, and because the Plaintiff's claims only sound in tort, rather than any federal cause of action, West Virginia law applies. Under West Virginia law, the Plaintiff must satisfy certain prerequisites before filing suit against a health care provider. In particular, the Plaintiff must serve the relevant health care provider with a notice of claim and an attached screening certificate of merit, executed under oath by a health care provider qualified as an expert under the West Virginia Rules of Evidence at least thirty (30) days prior to filing suit. W. Va. Code § 55-7B-6.[3] A Plaintiff must comply with this provision prior to filing suit in federal court. *Stanley v. United States*, 321 F.Supp.2d 805, 806-07 (N.D.W.Va. 2004); also see *Starns v. United States*, 923 F.2d 34 (4th Cir. 1991) (holding that Virginia's medical malpractice liability cap applies to claims brought against the United States under the FTCA). West Virginia Code § 55-7B-6(c), however, provides that no screening certificate of merit is necessary where "the cause

---

[3] West Virginia Code § 55-7B-6 provides, in pertinent part:
(a) [n]otwithstanding any other provision of this code, no person may file a medical professional liability action against any health care provider without complying with the provisions of this section. (b) At least thirty days prior to the filing of a medical professional liability action against a health care provider, the claimant shall serve by certified mail, return receipt requested, a notice of claim on each health care provider the claimant will join in litigation. The notice of claim shall include a statement of the theory or theories of liability upon which a cause of action may be based, and a list of all health care providers and health care facilities to whom notices of claim are being sent, together with a screening certificate of merit. The screening certificate of merit shall be executed under oath by a health care provider qualified as an expert under the West Virginia rules of evidence and shall state with particularity: (1) The expert's familiarity with the applicable standard of care in issue; (2) the expert's qualifications; (3) the expert's opinion as to how the applicable standard of care was breached; and (4) the expert's opinion as to how the breach of the applicable standard of care resulted in injury or death. A separate screening certificate of merit must be provided for each health care provider against whom a claim is asserted. The person signing the screening certificate of merit shall have no financial interest in the underlying claim, but may participate as an expert witness in any judicial proceeding. Nothing in this subsection may be construed to limit the application of Rule 15 of the Rules of Civil Procedure.

9

of action is based upon a well-established legal theory of liability which does not require expert testimony supporting a breach of the applicable standard of care."

Magistrate Judge VanDervort, reviewing the Plaintiff's Notice of Claim and Certificate of Merit, found that the Plaintiff failed to timely and properly file an MPLA screening certificate. (PF&R, at 11.) Magistrate Judge VanDervort first noted that the "Plaintiff's 'Certificate of Merit' is a self-prepared document signed by [the] Plaintiff," and thus, found that the "Certificate of Merit" did not "comply with W. Va. Code §55-7B-6 because it is not executed under oath by a health care provider, who is qualified as an expert under the West Virginia Rules of Evidence." (*Id*.) Magistrate Judge VanDervort then considered whether the Plaintiff's claims could satisfy W. Va. Code §55-7B-6(c), which permits claims to proceed without a certificate of merit when based upon a "well-established legal theory of liability" that does not "require expert testimony …" W. Va. Code §55-7B-C. Magistrate Judge VanDervort noted that Dr. Hughes' treatment involved "filling placement, a root canal, the installation of a post and core, the fabrication of an occlusal mouth guard, and the extraction of teeth." (*Id*. at 12, citing Pl.s' Notice of Claim, at 4.) Because the Plaintiff claimed that "[Dr.] Hughes provided inadequate and delayed dental treatment, which resulted in the loss of three teeth," Magistrate Judge VanDervort found that "[e]xpert testimony is necessary to support a finding that the dental treatment provided … fell below the applicable standard of care." (*Id*.) Thus, the Magistrate Judge found that "what constitutes timely treatment, risk factors, symptoms, possible side-effects, and appropriate treatment options for the above conditions are not within the understanding of lay jurors by resort to common knowledge and experience." (*Id*., citing *United States v. Ellis*, 2013 WL 4679933 (S.D.W.Va. Aug. 30, 2013) (Berger, J.) (adopting the findings of Magistrate Judge VanDervort

10

that what constitutes appropriate treatment for cavities, gum disease, and broken teeth are not within the understanding of lay jurors.).) Magistrate Judge VanDervort therefore found that the Plaintiff was not "excused from filing a screening certificate of merit," and recommended that the Plaintiff's Complaint be dismissed. (*Id*. at 13.)

In his Objections, the Plaintiff argues that this finding by Magistrate Judge VanDervort is "meritless." (Pl.s' Objections, at 2.) The Plaintiff claims that he provided the Defendants with "the only 'screening certificate' he could get." (*Id*.) The Plaintiff argues that the certificate of merit requirement "is not jurisdictional," nor "should it be used as a shield," particularly where "any lay person could see a broken tooth, lost filling, and an infection." (*Id*.)

The Court does not agree. It is indisputable that the Plaintiff seeks to recover for medical malpractice, and that his action is properly classified as a "medical professional liability action" against Dr. Hughes and the other Defendants. Therefore, Magistrate Judge VanDervort correctly applied West Virginia law to the Plaintiff's claims, and correctly found that the Plaintiff failed to satisfy the certificate of merit requirement of W. Va. Code § 55-7B-6. The Plaintiff's *Certificate of Merit* was not signed by a health care provider qualified as an expert under the West Virginia Rules of Evidence. Rather, the Plaintiff signed the *Certificate of Merit* himself. He has proffered no evidence indicating that he is a health care provider, or otherwise qualified as an expert in dental care under the West Virginia Rules of Evidence.

Magistrate Judge VanDervort also properly determined that the Plaintiff's claims do not qualify for the exemption from the screening certificate of merit requirement found in W. Va. Code §55-7B-6(c).[4] The Plaintiff does not assert a well-established legal theory of liability which does

---

[4] This section states, in relevant part, "Notwithstanding any provision of this code, if a claimant or his or her counsel, believes that no screening certificate of merit is necessary because the cause of action is based upon a well-established

11

not require expert testimony. To the contrary, the Plaintiff's claims – which, as Magistrate Judge VanDervort noted, involve detailed allegations about the adequacy of, *inter alia*, fillings, a root canal, the fabrication of a mouth guard and the extraction of teeth – are precisely the sort of claims which require expert testimony to assist the trier of fact in assessing whether a health care provider satisfied the applicable standard of care.

Under West Virginia law, expert testimony is not required under the MPLA "where the lack of care or want of skill is so gross as to be apparent," or where "the alleged breach relates to noncomplex matters of diagnosis and treatment" which a lay juror may comprehend "by resort to common knowledge and experience." *Farley v. Shook*, 218 W.Va. 680, 685 (2006), citing *Banfi v. American Hosp. for Rehabilitation*, 207 W.Va. 135, 529 S.E.2d 600 (2000). A court in this district has found that a Plaintiff's malpractice claims were based upon a sufficiently well-established theory of liability, where a Plaintiff asserted that a surgeon "implanted the too large [p]rosthesis backward causing diminished bloodflow and subsequent [n]ecrosis and infection." *Johnson v. United States*, 394 F.Supp.2d 854, 858 (S.D.W.Va. 2005). However, in that case, Judge Chambers noted that "when this Court considers this claim in the light most favorable to Plaintiffs, the Court finds *it is one which may not require expert testimony in order to prove liability* …" *Id* (emphasis added). This Court cannot reach the same conclusion relative to the Plaintiff's claims. As an initial matter, *Johnson* is a "rare exception to the 'general rule that in medical malpractice cases negligence or want of professional skill can only be proved by expert witnesses.'" *Giambalvo v. United States*, 2012 WL 984277, at *4 (N.D.W.Va. March 22, 2012).

---

legal theory of liability which does not require expert testimony supporting a breach of the applicable standard of care, the claimant or his or her counsel, shall file a statement specifically setting forth the basis of the alleged liability of the health care provider in lieu of a screening certificate of merit." W. Va. Code §55-7B-6(c).

12

Moreover, the Court finds allegations about the adequacy of fillings, a root canal, and the other allegedly negligent acts of Dr. Hughes are clearly distinct from allegations of an improperly implanted and improperly sized prosthetic, and are clearly beyond the "common knowledge and experience" of a lay fact finder. *See, e.g.*, *O'Neil v. United States*, 2008 WL 906470 (S.D.W.Va. March 31, 2008) (Johnston, J.) (treatment of Graves disease, hyperthyroidism, congestive heart failure and cardiomyopathy not within understanding of lay jurors by resort to common knowledge and experience). Nor could a lay person reasonably be expected to determine if such dental work complied with the applicable standard of care absent expert testimony about both the allegedly negligent dental care and the precise contours of the standard of care. Thus, the Court finds that Magistrate Judge VanDervort correctly determined that the Plaintiff's claims did not qualify for the screening certificate of merit exception set forth in W.Va. Code §55-7B-6(c).

### 3. The Plaintiff's Eighth Amendment Claims

In his Objections, the Plaintiff also alleges that the Defendants' negligence violated his Eighth Amendment rights. (Pl.s' Objections, at 4-6.) Specifically, the Plaintiff argues that the Defendants' "[o]bvious delay [of] over one year after repeated requests for treatment," and Dr. Hughes' allegedly negligent care resulted in an "unnecessary and wanton infliction of pain" that "was calculated, purposeful and deliberate." (*Id*. at 4.) Further, the Plaintiff alleges that the Defendants violated his right, under the Eighth Amendment, to "dental care and treatment in the most effective manner." (*Id*.)

While the Court has liberally construed the Plaintiff's pleadings, the Court notes that "[l]iberal construction does not require courts to construct arguments or theories for a *pro se* plaintiff because this would place a court in the improper role of an advocate seeking out the

13

strongest arguments and most successful strategies for a party." *Miller v. Jack*, 2007 WL 2050409, at * 3 (N.D.W.Va.2007) (citing *Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir.1978)). In other words, a court may not construct legal argument for a plaintiff. *Small v. Endicott*, 998 F.2d 411 (7th Cir.1993). Here, the Court finds that the Plaintiff's objection under the Eighth Amendment must fail, because the Plaintiff does not "direct the Court to a specific defect in the Magistrate's proposed findings and recommendations." *Orpiano v. Johnson*, 687 F.2d 44, 47 (4th Cir. 1982.) Nor did the Plaintiff raise an Eighth Amendment claim in either his Notice of Claim or his Complaint.

## CONCLUSION

Wherefore, for the reasons set forth herein, the Court **ORDERS** that the Magistrate Judge's *Proposed Findings and Recommendation* (Document 52) be **ADOPTED**, and that the Plaintiff's *Objections* to the PF&R (Document 60) be **OVERRULED**.

The Court further **ORDERS** that the *United States' Motion to Dismiss* (Document 35) be **GRANTED**, that the Plaintiff's *Complaint* (Document 9) be **DISMISSED**, that any pending motions be **TERMINATED AS MOOT**, and that this matter be **REMOVED** from the docket.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and to any unrepresented party.

ENTER: January 11, 2016

*[signature]*
IRENE C. BERGER
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF WEST VIRGINIA